United States District Court
Southern District of New York
--------------------------------------------------------x

Alpha Capital Anstalt,

                Plaintiff,

    v.

Iconic Brands, Inc.,

                Defendant.

--------------------------------------------------------x

<u>Reply Affirmation</u>

17 CV 2075 (PGG)

Ari Rabinowitz hereby affirms under penalties of perjury of the laws of the United States of America:

1. I am an officer of LH Financial Services, Inc. ("LH"), a New York corporation which is the service agent for Plaintiff Alpha Capital Anstalt ("Alpha Capital"). In that capacity, LH is charged with finding and supervising potential investments for Alpha Capital in the United States. Alpha Capital also services those investments by, among other things, holding convertible securities which Alpha Capital may acquire so that the securities can be quickly and efficiently converted. I was the primary person at LH who supervised Alpha Capital's purchase of Defendant Iconic Brands, Inc.'s ("ICNB") convertible notes. I was the primary person at LH who dealt with ICNB after it failed to honor Alpha Capital's conversion request. As such, I have personal knowledge of the matters set forth herein. I submit this Affirmation in reply to the DeCicco Affirmation filed on April 24, 2017 and in further support of Alpha Capital's motion.

2. ICNB's only argument to defeat Alpha Capital's motion is that Alpha Capital allegedly entered into a settlement agreement with ICNB on March 7, 2017 and that this suit violates the terms of that alleged agreement. Thus in ¶9 of his Affirmation, DeCicco states:

> On March 7, 2017, Iconic, Alpha and other holders of the Iconic Notes (collectively, the "Noteholders") entered into an agreement (the "March 7, 2016 [sic] Agreement"). A copy of the fully executed March 7, 2017 Agreement is annexed hereto as Exhibit B.

That statement is demonstrably false because on March 16, in response to an email which I sent to DeCicco, he states (Exhibit A):

> I only received the agreement a few days ago. I am sorry but I am in Kentucky, Counsel was not available and I am now doing the best I can. I am sorry that is the best I can do I can not and will not sign until our attorney reviews this[.] I ask you how I can sign something prepared by your side. Without our own review. [sic]

Thus while affirming to the Court that ICNB had a fully executed settlement agreement on March 7, in fact ICNB had not signed the settlement agreement nine days later because its attorneys had not yet reviewed it. Indeed, on March 22, DeCicco sends yet another email stating that he has retained new counsel who has not yet reviewed the proposed settlement agreement (Exhibit B). DeCicco states:

> I felt I owed you all an explanation as to where we are in the process of reviewing the settlement agreement.
> I have retained new counsel for the company and counsel needs to

>get up to speed with not just the agreement but the company and the history of the loan documents themselves and other corporate files. I am sure you can appreciate this is a Herculean task.

It is, therefore, clear beyond doubt, that ICNB's claim of a signed settlement agreement on March 7 is simply untrue. Because ICNB's only argument against the award of preliminary injunctive relief is without any basis in fact, the Court should award the requested relief.

3. A brief review of the uncontested facts of this case, supported by contemporary emails, demonstrates conclusively that Alpha Capital, after attempting to secure an executed settlement agreement for almost a month, informed ICNB that if a fully executed settlement agreement was not forthcoming by March 17, Alpha Capital would not settle but would pursue its rights in Court. When no agreement was obtained by March 17, this action was commenced on March 22, 2017.

4. As set forth in the moving Ackermann Affirmation, on January 27, 2017, Alpha Capital duly submitted a conversion notice to ICNB to convert a portion of one of its notes into ICNB common stock. When ICNB refused to honor that notice, I along with representatives of other purchasers of ICNB convertible notes, entered into negotiations with ICNB to resolve all outstanding issues.

5. On February 17, 2017, DeCicco (but none of the note holders) conditionally signed a Memorandum of Understanding ("MOU") (Exhibit C) setting forth the terms of the proposed

settlement between and among ICNB and the convertible note holders. The MOU clearly contemplated a formal contract to follow. DeCicco's email setting forth the conditional nature of his signing the MOU is annexed hereto as Exhibit D. As the email sets forth, DeCicco only signed the MOU because of my insistence (and the insistence of one other note holder) that he do so. I made clear to another investor on February 17 that Alpha Capital was not pleased with the proposed settlement but would go along if the deal was immediately signed by ICNB (Exhibit E).

6. When I did not hear from DeCicco, I sent him an email on February 22 inquiring about the status of the settlement agreement. By return email, he assured me that he would have something back to us by the next day (Exhibit F). On February 23, DeCicco wrote (Exhibit G) that ICNB "has begun the process of getting the agreement done."

7. On March 8, 2017, I received an email from Steven Hicks, representing one of the other convertible note holders, enclosing the proposed final settlement, subject to the approval of the convertible note holders (Exhibit H). On March 13, I received another email from Hicks (Exhibit I) requesting Alpha Capital's signature to the settlement agreement and further requesting that we forward to him the original convertible note. Hicks, as set forth in the email, was contemplating a closing the morning of March 13. I forwarded to Hicks Alpha Capital's signed signature pages.

8. When the settlement was still not closed by Thursday March 16, I sent an email to DeCicco on that day inquiring about the status of the settlement (Exhibit J). He responded that he

had scheduled a meeting with his counsel for March 20 (the following Monday) but that he would not be back in New York until the following Wednesday (March 22). He refused to sign the settlement until his attorneys reviewed it (Exhibit J), although nothing prevented him from forwarding the three page settlement agreement to his attorneys much earlier. Again, as noted above (Exhibit B), on March 22 DeCicco sent another email stating that he had retained new counsel who has not yet reviewed the proposed settlement and that he could not sign until counsel reviewed the documents.

9. I became convinced that DeCicco was simply stalling for time and would not execute the settlement. The proposed settlement by that time had been pending for almost a month and was still unexecuted. On March 16, therefore, I sent him another email stating that unless the settlement was finalized that week - i.e, by March 17 - Alpha Capital was no longer interested in settling. Thus I specifically wrote DeCicco as follows (Exhibit A):

> The agreement has been out for over a week, I would think you could have emailed it to your lawyer then.
> I was reluctant to agree to this in the first place and am now at the point where if it's not finalized this week we will not agree to it and we will enforce our current rights.

When I did not timely receive back the fully executed settlement agreement, I instructed our attorneys to commence suit, which they did on March 22.

10. There is (and can be) no dispute, therefore, that there was no settlement agreement ever entered into between Alpha Capital and ICNB. It appears that after Alpha Capital brought suit, DeCicco simply appended ICNB's signature to the draft settlement agreement and improperly represented to the Court that there was a valid settlement agreement in existence. Alpha Capital, however, had already informed DeCicco that it would not agree to settle after March 17. Thus there was no meeting of the minds on settlement, and, therefore, there was no settlement agreement. To the extent that the existence of a draft settlement agreement can be construed as an offer by Alpha Capital to settle on the terms contained therein, my email to DeCicco on March 16 clearly withdrew any such offer.

11. Other than the spurious argument that Alpha Capital was bound by an unexecuted settlement agreement, ICNB does not dispute any of the allegations of the moving papers, including, but not limited to, Alpha Capital's contention that it is entitled to stock. ICNB's argument that it has more than sufficient stock to satisfy Alpha Capital's claims at the end of the litigation is unpersuasive. First, ICNB has made no showing that its authorized shares are sufficient to meet all its conversion obligations which may occur during the course of this litigation. ICNB also admits that it is using stock to pay its ordinary operating expenses, which will further deplete its supply of shares over time, to an unquantified and unquantifiable extent. Second, ICNB's shares will inevitably become further diluted as time passes and more shares are issued to honor conversions and to pay ongoing obligations. There is also a substantial risk that ICNB will not be in business at the conclusion of this case. Thus an award of shares at the end of the case will not compensate Alpha Capital for its loss of ability to sell the shares now.

12. There are no material disputed issues of fact. Alpha Capital is entitled to the immediate issuance of the stock. The Court should, therefore, grant Alpha Capital the relief it seeks.

Dated: New York, New York
April 25, 2016

_____
Ari Rabinowitz